UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-PO-149 (JRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CHAD L. AHRENDT, | |
| Defendant. | |

Katharine T. Buzicky, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

William G. Peterson, **PETERSON LAW OFFICE, LLC**, 3601 Minnesota Drive, Suite 800, Bloomington, MN 55435, for defendant.

In 2012, Defendant Chad L. Ahrendt ("Ahrendt") was charged with six separate violations of 16 U.S.C. § 668dd(f)(2), all arising out of the allegation that he illegally trapped minnows within the boundaries of federal Waterfowl Production Areas ("WPAs") on Barry Lake and Geyer Lake in Minnesota. On November 14, 2014, following a bench trial, United States Magistrate Judge Leo I. Brisbois found Ahrendt guilty of five of the charges. The Magistrate Judge sentenced Ahrendt on December 10, 2014, ordering him to pay a fine of $2,500, along with an assessment of $25.

Before the Court is Ahrendt's timely appeal of that conviction. Although he agrees that the facts in the case are undisputed, Ahrendt argues on appeal that the

applicable federal law explicitly recognizes the primacy of state law in riparian rights cases. State law in Minnesota, Ahrendt contends, would allow the minnow trapping at issue because it does not recognize the invisible boundary lines across lakes that allegedly separate private lake areas from WPA lake areas. Because state law does not protect Ahrendt's activities, and because the relevant federal and state laws are in harmony as to Ahrendt's case, the Court will affirm his conviction.

## BACKGROUND

The facts of this case are undisputed. (*See* Appellant's Mem. of Law ("Appellant's Mem.") at 1, Apr. 20, 2015, Docket No. 14; Appellee's Mem. of Law ("Appellee's Mem.") at 1, May 7, 2015, Docket No. 19.) On January 30, 2008, federal and state wildlife officials acting upon an anonymous complaint discovered tracks from an all-terrain vehicle ("ATV") crossing onto the iced surface of Barry Lake in Toqua Township in Big Stone County, Minnesota. (Findings of Fact and Conclusions of Law ("Order") at 1-2, Nov. 19, 2014, Docket No. 3.) Barry Lake is surrounded by both private riparian lands and riparian lands of the federal Barry Lake WPA. (*Id.* at 1.) There they observed several floats known to mark the location of minnow traps beneath the surface of the lake. (*Id.* at 2.) The officials located approximately sixty-two minnow traps bearing the tag "Todd Ahrendt, owner of Buckstar Bait." (*Id.*) The minnow traps were located within the Barry Lake WPA. (*Id.*)

On February 7, 2008, authorities observed Ahrendt driving an ATV across the frozen surface of Barry Lake, checking minnow traps. (*Id.*) Ahrendt had about 100


gallons of minnows with him at the time. (*Id.*) Ahrendt stated that he believed he was legally entitled to access the water because he had the permission of one of the private riparian owners to cross a private lot on an ATV and enter Barry Lake from private property. (*Id.*) Ahrendt admitted that he was on Barry Lake for commercial purposes; namely to capture minnows for Buckstar Bait, which he owned and operated with his father. (*Id.* at 3.)

On April 12, 2012, officials discovered floats known to mark the location of minnow traps on Geyer Lake in Tara Township in Traverse County, Minnesota. (*Id.* at 3-4.) Geyer Lake, like Barry Lake, is surrounded by both private riparian lands and riparian lands of the Geyer WPA. (*Id.* at 3.) The officials examined three of the twenty-seven minnow traps located within the boundaries of the Geyer Lake WPA, and observed that they were marked as belonging to Todd Ahrendt. (*Id.* at 4.) On April 18, 2012, the officials discovered a Buckstar Bait vehicle parked on a road adjacent to the Geyer Lake WPA. (*Id.*) They then found Ahrendt in a motorized boat on Geyer Lake. (*Id.*) Ahrendt had accessed Geyer Lake from a public right-of-way adjoining the lake, and had set minnow traps at several locations in the lake, again for commercial purposes. (*Id.*)

In neither instance did Arendt have a federal permit to trap minnows or conduct a commercial enterprise in National Wildlife Refuge Lands such as the Barry Lake or Geyer Lake WPAs. (*Id.* at 3, 5.) The United States charged Ahrendt with six violations relating to the 2008 and 2012 illegal minnow trapping incidents. (*Id.* at 5.) The charges were:

    1.  Traveling on other than a designated route of travel in violation of 16 U.S.C. § 668dd(f)(2) and 50 C.F.R. § 27.31, on February 7, 2008;

    2.  Collecting animals (i.e., illegally trapping minnows) on National Wildlife Refuge lands in violation of 16 U.S.C. § 668dd(f)(2) and 50 C.F.R. § 27.51(a), on February 7, 2008;

    3.  Conducting a commercial enterprise on National Wildlife Refuge lands in violation of 16 U.S.C. § 668dd(f)(2) and 50 C.F.R. § 27.97, on February 7, 2008;

    4.  Conducting a commercial enterprise on National Wildlife Refuge lands in violation of 16 U.S.C. § 668dd(f)(2) and 50 C.F.R. § 27.97, on April 18, 2012;

    5.  Failing to comply with refuge specific regulations by operating a motorized boat within the Geyer Lake WPA boundaries in violation of 16 U.S.C. § 668dd(f)(2) and 50 C.F.R. § 26.22(a), on April 18, 2012; and

    6.  Collecting animals (i.e., illegally trapping minnows) on National Wildlife Refuge lands in violation of 16 U.S.C. § 668dd(f)(2) and 50 C.F.R. § 27.51(a) on April 18, 2012.

(Order at 5-6.)

Given the undisputed facts of the case and the plain language of the applicable statute and regulations, the Magistrate Judge found Ahrendt guilty of five[1] of the six counts.  *See* 16 U.S.C. § 668dd(c) ("No person shall . . . take or possess any fish, bird, mammal, or other wild vertebrate or invertebrate animals or part or nest or egg thereof within any such area [i.e., National Wildlife Refuge area, such as a WPA]; or enter, use, or otherwise occupy any such area for any purpose."); *id.* § 668dd(f)(2).  Specifically, he found Ahrendt guilty of Counts 2-6: two counts of collecting minnows illegally on

---

[1] The Magistrate Judge found Ahrendt not guilty on Count 1, traveling on other than a designated route of travel.  The Magistrate concluded that the prosecution had failed to present clear and convincing evidence that Ahrendt's travel within the Barry Lake WPA "was other than 'designated.'"  (Order at 7-8.)

- 4 -

National Wildlife Refuge Lands, two counts of illegally conducting a commercial enterprise on National Wildlife Refuge Lands, and one count of operating a motorized boat within the Geyer Lake WPA.  (Order at 7.)

The Magistrate Judge sentenced Ahrendt on December 10, 2014, ordering him to pay a fine of $2,500, along with an assessment of $25.  (Sentencing J., Dec. 12, 2014, Docket No. 6.)  Ahrendt filed this timely appeal on December 19, 2014.  (Notice of Appeal, Dec. 19, 2014, Docket No. 7.)

## ANALYSIS

### I. STANDARD OF REVIEW

"A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge."  Fed. R. Crim. P. 58(g)(2)(B).  "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).

### II. AHRENDT'S RIPARIAN RIGHTS

In his appeal, Ahrendt challenges the Magistrate Judge's decision on multiple fronts.  First and foremost, he claims that Minnesota law on riparian rights gives him the right to travel lakes extensively and fish, even for commercial purposes, so long as he accessed the lake lawfully.  (Appellant's Mem. at 11 ("When . . . Ahrendt had lawful riparian access to Barry Lake and Geyer Lake, he had the right to travel the full extent of the lake surfaces for fishing for minnows.").)  The Minnesota Supreme Court has held, in

a seminal case on the issue, that riparian rights afford individuals a right of reasonable use of a lake's entire surface "for fishing, boating, hunting, swimming, and other uses, **domestic or recreational**," "regardless of the navigable or public character of the lake and regardless of the ownership of the bed thereof." *Johnson v. Seifert*, 100 N.W.2d 689, 696-97 (Minn. 1960) (emphasis added); *Bloomquist v. Comm'r of Natural Res.*, 704 N.W.2d 184, 187 (Minn. Ct. App. 2005) ("Riparian rights are the rights to reasonably use the surface of waters abutting a parcel of real property.").

Ahrendt argues that *Johnson's* holding on riparian rights applies to allow him to trap minnows, since he entered both Barry Lake and Geyer Lake legally and *Johnson* empowers him to use the entirety of the lake. According to Ahrendt, because he was a licensee of a person with lawful access to Barry Lake and had lawful access to Geyer Lake via a public right-of-way, he had a right to use the entirety of those lakes to trap minnows without regard to the boundaries of the federally-owned WPAs. In effect, Ahrendt claims that *Johnson* precludes any distinction by the federal government between parts of a lake that are private or for general use, and parts of a lake that fall within a WPA.

The key issue, then, is whether the *Johnson* doctrine applies to the commercial activity at issue here: trapping minnows for sale at a commercial bait shop. Although *Johnson* seems to limit its application of the riparian rights doctrine to domestic or recreational uses of lakes, Ahrendt argues that *Johnson* also applies to his admittedly commercial activity. He relies in large part on *Pratt v. Minnesota Department of Natural Resources*, in which the Minnesota Supreme Court included the right to grow and harvest

wild rice under the umbrella of a shore owner's riparian rights. 309 N.W.2d 767, 771-72 (Minn. 1981); *see also Application of Cent. Baptist Theological Seminary*, 370 N.W.2d 642, 646 (Minn. Ct. App. 1985) ("Riparian rights are those such as hunting, fishing, boating, sailing, irrigating, and growing and harvesting wild rice."). Ahrendt claims that the right to trap, collect, and sell minnows is no different than the right to harvest and sell wild rice.

Ahrendt's argument extends the holding of *Pratt* too far, however. Minnesota courts – both before and after *Pratt* – have recognized riparian rights as applying to "domestic or recreational activities." *Application of Christensen*, 417 N.W.2d 607, 614 (Minn. 1987). Courts have elaborated on this interpretation by categorizing riparian rights as "positive rights," which "foster[ the] use of the water for navigation, recreation, or harvest." *McLafferty v. St. Aubin*, 500 N.W.2d 165, 168 (Minn. Ct. App. 1993). In other words, *Pratt* stands less for the proposition that riparian rights extend to all commercial activity and more that riparian rights apply to domestic and recreational activity, and activity that is largely positive and that does not detract from the rights of other users. Using the water as an irrigation and growing tool to produce a crop like wild rice is one such **positive** iteration of riparian rights. *Id.* Draining a lake, however, or building a radio tower that would interfere with the rights of other users, is not the sort of positive, domestic, or recreational usage that riparian rights encompass. *See Christensen*, 417 N.W.2d at 614; *Cent. Baptist Theological Seminary*, 370 N.W.2d at 646. Similarly, taking large stocks of minnows from a lake, and selling them commercially, is not the sort of positive usage of a lake that Minnesota courts would put under the umbrella of

riparian rights. It depletes the lake's resources, and interferes with the ability of other holders of riparian rights to use the lake and its resources fully. As such, Ahrendt's activity is closer to the type that courts in *Christensen* and *Central Baptist Theological Seminary* have stated is not encompassed by riparian rights.

Moreover, multiple Minnesota cases note that riparian rights are not absolute and unimpeachable, as Ahrendt makes them out to be, but are subject to government authority and the public interest. *Nelson v. City of Birchwood*, A09-230, 2009 WL 3426792, at *6-7 (Minn. Ct. App. Oct. 27, 2009). In sum, the Court will reject Ahrendt's argument on appeal that Minnesota law on riparian rights empowers him to use the entire area of a Minnesota lake, even if partially under the control of the federal government as a WPA, for commercial trapping and selling of minnows. As a result, the Court will affirm the Magistrate Judge's conviction of Ahrendt because the argument that riparian rights include and protect his commercial minnow trapping is his central contention on appeal. Nevertheless, the Court will briefly discuss his argument that state riparian rights law supplants federal law on National Wildlife Refuge areas.

### III.    FEDERAL AND STATE LAW

Ahrendt also argues that his interpretation of state law has primacy over federal law. Specifically, Ahrendt contends that the language of 16 U.S.C. § 668dd suggests that federal water law should not preempt state riparian rights law, and the Magistrate Judge therefore erred in applying federal regulations to this case.

16 U.S.C. § 668dd states, in pertinent part "[n]othing in this Act shall constitute an express or implied claim or denial on the part of the Federal Government as to exemption from State water laws." 16 U.S.C. § 668dd(j).[2] Ahrendt interprets this section to mean that state water law rights prevail over any federal law or regulations. However, no conflict exists between federal law and state law that would trigger this provision. As noted above, state riparian rights do not encompass the commercial activity at issue here. Moreover, state law explicitly articulates that federal law on National Wildlife Refuge areas, and WPAs in particular, governs certain waters and lands. Minn. Stat. § 97A.098 ("A person may not enter or use a national wildlife refuge or federal waterfowl production area in violation of federal law."); *see also id.* § 97A.025 ("The ownership of wild animals of the state is in the state, in its sovereign capacity for the benefit of all the people of the state. A person may not acquire a property right in wild animals, or destroy them, unless authorized under the game and fish laws.").

Finally, even if a conflict existed between state riparian rights law and federal law, federal law would govern. Despite Ahrendt's arguments to the contrary, the Constitution, and federal and state law in this instance, all recognize the supremacy of federal law over conflicting state law, and the authority of Congress to regulate commercial activities in WPAs. U.S. Const. art. VI, cl. 2; Minn. Stat. § 97A.098; *Noe v. Henderson*, 456 F.3d 868, 870 (8th Cir. 2006) ("Federal preemption occurs when . . . state law directly conflicts with federal law."); *Minnesota by Alexander v. Block*, 660 F.2d 1240, 1249 (8th Cir.

---

[2] Ahrendt also cites 16 U.S.C. §§ 668dd(n) and (l), but as the government correctly points out, neither of those provisions are applicable or relevant to Ahrendt's attempt to engage in commercial fishing in a WPA.

1981) ("Congress clearly has the power to dedicate federal land for particular purposes.") In sum, because state law does not protect Ahrendt's activities, and because the relevant federal and state laws are in harmony as to Ahrendt's case, the Court will reject Ahrendt's arguments on appeal and affirm his conviction.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the judgment [Docket No. 3] is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: October 21, 2015          ____s/ John R. Tunheim____
at Minneapolis, Minnesota.          JOHN R. TUNHEIM
         Chief Judge
         United States District Court